# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

IN RE:
HENRY M. SOARES,                                    Chapter 7
            DEBTOR                                  Case No. 04-14044-WCH

## MEMORANDUM OF DECISION

## I. INTRODUCTION

The matter before the Court is the Chapter 7 trustee's Objection to the Proof of Claim of the

Department of the Treasury - Internal Revenue Service (the "Objection") and the response of the

Internal Revenue Service (the "Service"). The Chapter 7 Trustee (the "Trustee") contends that the

IRS' claim should be allowed as a tardily filed claim as it was filed after the deadline for filing

proofs of claim. The Service argues that its answer filed in a related adversary proceeding prior to

the claims deadline constituted a timely informal proof of claim, which the Service has subsequently

amended with its formal proof of claim. For the reasons set forth below, I will enter an order

overruling the Trustee's Objection.

## II. BACKGROUND

Henry M. Soares (the "Debtor") filed a petition under Chapter 7 of the Bankruptcy Code on

May 12, 2004 and the Trustee was duly appointed. The Debtor's petition indicated that it was a no-

asset case, and the notice of meeting of creditors, see 11 U.S.C. § 341, advised creditors not to file

a proof of claim unless they received notice to do so.[1]

---

[1] Docket No. 6.

1

On June 15, 2004, the Debtor filed an adversary proceeding (the "Debtor's Adversary Proceeding") against the Service seeking a determination that federal income taxes owed for tax years 1989, 1992, and 1993 were dischargeable.[2]  The Trustee was not a party to the adversary proceeding.  The Service filed an answer to the complaint (the "Answer") on July 21, 2004 in which it denied that the Debtor's income tax liabilities for the years 1992 and 1993 were dischargeable debts.  The Answer further stated that as of July 5, 2004, the outstanding account balances for the taxable years 1989, 1992, and 1993 owed by the Debtor to the Service were as follows:

| Taxable Year | Account Balance | Accrued Interest (as of 7/5/04) | Account Balance Plus Accruals |
|---|---|---|---|
| 1989 | $0.00 | $0.00 | $0.00 |
| 1992 | $0.00 | $7,252.01 | $7,252.01 |
| 1993 | $26,361.99 | $17,171.17 | $43,533.16 |

On October 7, 2004, the parties filed a Judgment by Consent wherein they stipulated: that the federal income tax liabilities for the taxable year 1989 had been paid; that "[t]he federal income tax liabilities owed by the Debtor to the United States of America for each of the taxable years 1992 and 1993 are dischargeable debts;" and that "[e]ach Notice of Federal Tax Lien properly filed by the Internal Revenue Service against the Debtor prior to the commencement of the Debtor's bankruptcy case is neither voided nor avoided as to all property subject to such liens and all such property is subject to levy by the United States."[3]

On September 15, 2004, the Trustee filed an adversary proceeding (the "Trustee's Adversary Proceeding") against the Debtor and his wife seeking to avoid the Debtor's alleged fraudulent

---

[2] *Soares v. United States of America*, Adv. P. No. 04-1195.

[3] Judgment by Consent, Docket No. 6, Adv. P. No. 04-1195.

transfer of one-half of his interest in certain real estate located in Dartmouth, Massachusetts to his

wife in 2000.[4]  The Trustee argued, *inter alia*, that the Debtor owed substantial taxes to both the

Service and the Massachusetts Department of Revenue (the "MDOR") at the time of the transfer and

was either insolvent or rendered insolvent as a result of the transfer.  Specifically, the Trustee alleged

a federal income tax debt of approximately $49,054.15 for the taxable years 1992 and 1993 and

attached the Service's notice of unpaid taxes.  In a footnote, the Trustee acknowledged that the

Debtor had filed an adversary proceeding alleging that the taxes owed for the years 1989, 1992, and

1993 were dischargeable.[5]

On December 30, 2004, the Trustee notified the Court that it appeared assets were available

for distribution and requested a deadline be established for the filing of proofs of claim.[6]  The Court

set March 30, 2005 as the claims bar date.[7]  The docket reflects that the Service was properly served

with the claims bar date notice.[8]  The Service, however, did not file a formal proof of claim by this

deadline.  As of March 30, 2004, the claims in this case totaled $13,769.51.

The Trustee filed a Motion to Approve Settlement of Adversary Proceeding and Compromise

Claim (the "Motion") on June 8, 2005.[9]  The Motion recites the relevant facts of the adversary

proceeding, including the Trustee's allegation that the Debtor owed approximately $49,054.15 to the

---

[4] *Shamban v. Soares*, Adv. P. No. 04-1294.

[5] Complaint at 3 n.1, Docket No. 1, Adv. P. No. 04-1294.

[6] Docket No. 39.

[7] Docket No. 40.

[8] Docket No. 41.

[9] Motion at 2, Docket No. 18, Adv. P. No. 04-1294.

3

Service for the taxable years 1992 and 1993 and that the Debtor had filed an adversary proceeding to determine the dischargeability of this debt. In settlement of the adversary proceeding, the parties agreed that the Debtor and his wife would pay the sum of $20,000 to the Trustee (the "Settlement Proceeds"). The Trustee timely served the Service with the Motion and it did not file an objection. I granted the Motion on July 1, 2005.

On June 20, 2005, the Service filed a proof of claim (the "Formal Claim") asserting an unsecured nonpriority claim of $29,976.95.[10] The Trustee filed his Objection to the Formal Claim on October 9, 2007, arguing that it should be denied in its entirety because it was filed late. The Service filed a Response in Opposition to the Trustee's Objection (the "Opposition") in which it averred that the Answer constituted a timely informal proof of claim, and therefore the Formal Claim was merely an amendment.[11] I held a hearing on the Objection and Opposition on November 7, 2007, at which time the Trustee recommended that the Formal Claim be allowed as a tardily filed claim rather than be denied.[12] After oral arguments from both parties, I took the matter under advisement.

## III. POSITIONS OF THE PARTIES

### A. The Trustee

The Trustee asserts that the Formal Claim should be allowed as a tardily filed claim because it was filed on June 20, 2005, nearly three months after the claims bar date. He argues that in light of the estimated $10,000 in administrative claims, allowing the Formal Claim as timely would have

---

[10] Claim No. 6.

[11] Docket No. 55.

[12] Trans. Nov. 7, 2007 at 2, ¶ 13-16.

4

a significant impact on the dividend that will be paid the unsecured creditors, prejudicing their position. The Trustee further contends that he should not be bound by the Answer because he was not a party to the litigation in which it was filed. Finally, the Trustee notes that the Formal Claim is strictly unsecured and that the Service has made no claim to the contrary.

B. The Service

Relying on *Hart v. GMAC Mortgage Corp.*,[13] the Service primarily argues that the Answer, which was filed nine months prior to the claims bar date, constituted a timely informal proof of claim. The Service contends that the Answer stated the existence, nature, and amount of the claim, and indicated their intent to hold the Debtor liable for those amounts. Moreover, the Trustee was aware of the Answer, and his adversary proceeding was based in part upon fraud against the Service. Accordingly, the Formal Claim filed on June 20, 2005 was merely an amendment to the timely filed informal claim. Alternatively, the Service asserts that it was not required to file a proof of claim because it filed a Notice of Federal Tax Lien prepetition. As such, the Service argues that it had a perfected security interest in all property acquired by the Trustee.

IV. **DISCUSSION**

The Service puts forth two arguments: (1) that the Formal Claim is timely; and (2) that it has a security interest in the Settlement Proceeds. I will address the second argument first, because if the Service's contention is correct, the timeliness of the Formal Claim would be rendered moot.

A. Security Interest in Settlement Proceeds

Although there is no evidence of the Service's perfected tax lien in the record before me, I

---

[13] *Hart v. GMAC Mortgage Corp. (In re Hart)*, 246 B.R. 709, 713 n.4 (Bankr. D. Mass. 2000).

5

will assume, *arguendo*, that such a lien exists and was perfected prepetition given the language in

the Judgment by Consent and the lack of contradictory evidence.

In the Opposition, the Service cites *In re Seminole Backhoe Serv., Inc.*,[14] *In re Be-Mac*

*Transp. Co., Inc.*,[15] and *In re Harris*[16] for the proposition that its prepetition assessment and tax lien

gave it a security interest in any recovery which the Trustee acquired.  All three of these cases merely

stand for the proposition that a creditor with a perfected lien need not file a proof of claim.  They do

not address the issue at hand; namely, whether a perfected lien attaches to the settlement proceeds

of an adversary proceeding.

It is the burden of the Service to demonstrate entitlement to the settlement proceeds.[17]  This

issue has arisen in various contexts.  Some courts have taken the position that "a prepetition lien or

security interest will attach to an avoidance recovery if, but only if, what is recovered is clearly

identifiable as the collateral itself or as the proceeds of prepetition collateral, and if the creditor's

security interest would be enforceable against the transferee outside of bankruptcy."[18]  Two cases

with similar facts are particularly instructive on this issue.

---

[14]  *In re Seminole Backhoe Serv., Inc.*, 33 B.R. 914, 917-918 (Bankr. N.D. Tex. 1983).

[15]  *In re Be-Mac Transp. Co., Inc.*, 183 B.R. 563 (E.D. Mo. 1995).

[16]  *In re Harris*, 64 B.R. 717 (Bankr. D. Conn. 1986).

[17]  *See Callahan v. Internal Revenue Service (In re Ball)*, No. 7-99-02518-WSA, 2004 WL 909441 (Bankr. W.D. Va. Mar. 10, 2004).

[18]  *John Hancock Life Ins. Co. v. Jankowski (In re Hospitality Inv. Corp.)*, 283 B.R. 451, 455 (Bankr. E.D. Mich. 2002); *See also Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.)*, 178 B.R. 753 (Bankr.C.D. Ill.1995).

In *In re Ball*,[19] the Service similarly asserted that its tax lien attached to settlement proceeds of the Chapter 7 trustee's adversary proceeding challenging a purported spendthrift trust.  It had perfected several tax liens against the debtors in 1994 and 1995.[20]  Later, the debtors' children placed certain property in a spendthrift trust for the benefit of the debtors.[21]  The Chapter 7 trustee asserted that this property was actually the fire insurance proceeds that the debtors' received for their former residence and that the trust was merely a sham.[22]  In 1999, the children placed a parcel of improved real property in the trust.[23]  After the debtors' filed their case, the Chapter 7 trustee filed an adversary proceeding seeking to recover property for the estate.[24]  In settlement, the defendants agreed to pay to the Chapter 7 trustee $150,000 in full satisfaction of the estate's claims against the trust corpus from the sale of the improved parcel of real estate placed in trust by the debtors' children.[25]  The Service did not object to the settlement or appear at the hearing.[26]

The Chapter 7 trustee subsequently objected to the Service's claim in so far as it asserted a lien over the settlement proceeds.  The bankruptcy court found that because the adversary proceeding

---

[19] *In re Ball*, note 17 *supra*.

[20] *Id.* at *1.

[21] *Id.*

[22] *Id.* at *2.

[23] *Id.* at *1.

[24] *Id.* at *2.

[25] *Id.*

[26] *Id.*

was settled, the validity of the trust was never tested in court.[27]  In sustaining the Chapter 7 trustee's objection, the court stated:

> [T]here remains some obligation upon the IRS to establish that its challenged lien did attach to the property . . . used as consideration for the settlement and release of the Trustee's claim. . . . there is no evidence before the Court or which has been cited by the IRS that would establish that it ever had a lien upon the Washington County property which the Balls' son and daughter conveyed to the trust and the proceeds of which were used to provide the money for the settlement.[28]

In *In re Lowenstein*,[29] the United States government claimed that its lien arising from a criminal restitution claim attached the proceeds of a settlement of the Chapter 7 trustee's fraudulent transfer claims.  In a thorough opinion, the bankruptcy court found otherwise.  First, the court noted that the debtor transferred his interests in the real property that was the subject of the fraudulent transfer action between three and six years before the government's lien arose.[30]  Accordingly, the lien could not have attached to the debtor's interest in that property.[31]  Second, the Chapter 7 trustee did not avoid any fraudulent transfers, and the court made no determination that the debtor had fraudulently transferred any property.[32]  Third, the court made no determination as to the source of the settlement proceeds and they could not be traced to the transferred property.[33]  Fourth, the

---

[27] *Id.* at *3.

[28] *Id.*

[29] *In re Lowenstein*, 361 B.R. 326 (Bankr. D. Mass 2007).

[30] *Id.* at 334.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 334-335.  The court in *In re Figearo*, 79 B.R. 914, 917 (Bankr. D. Nev. 1987), has taken the position that settlement proceeds need not be traceable to the prepetition collateral in order for the security interest to attach.  Moreover, that court stated that it found no basis to

government failed to either object to the settlement or seek clarification that its lien attached to the settlement proceeds despite ample time and notice.[34]  Fifth, under Massachusetts law, fraudulent transfers are voidable, not void *ab initio*, and therefore the property did not belong to the debtor at the time the government's lien arose.[35]

In the present case, the Trustee accepted a cash settlement of his claim in lieu of litigating the avoidance action.  No fraudulent transfers were avoided, and I did not rule on the merits of his claim.  The Service was served with the Motion, but did not object or seek clarification of the treatment of its claim with respect to the Settlement Proceeds.  Nor has any proffer been made with respect to the source of the Settlement Proceeds.  Most importantly, the Service failed to establish that its lien was perfected prior to the alleged fraudulent transfer, and thus attached to the one-half interest that the Debtor transferred to his wife.

Moreover, I note that the Service has acted inconsistently with having a secured claim in this case.  First, the Service filed an unsecured claim, and did so only after receiving notice of the Motion and the Trustee's impending recovery for the estate.  Second, despite the fact it would receive better treatment as a secured creditor than as a general unsecured creditor, the Service did not argue this

---

treat the creditor's claim against the proceeds any differently merely because the Chapter 7 trustee compromised the litigation and accepted cash proceeds rather than property in kind.  79 B.R. at 98 n.11.  I need not address this issue in any detail because in *Figearo* it was without question that the creditor's security interest was perfected prior to the fraudulent conveyance at issue.

[34] *Id.* at 335.

[35] *Id.* at 336.  *See* Mass. Gen. Laws ch. 109A § 8(a)(1).  *But cf., e.g., In re Amtron, Inc.*, 192 B.R. 130, 132 (Bankr. D.S.C. 1995) (tax lien perfected post-fraudulent transfer attached to property recovered by the trustee because fraudulent conveyances are void under applicable South Carolina law).

theory primarily, did not brief it in the Opposition, and did not provide adequate information for me to make necessary findings.

Accordingly, the Service has not carried its burden in demonstrating that its lien attached to the Settlement Proceeds.

B.  Timeliness of the Formal Claim

Fed. R. Bankr. P. 3002(c)(5) provides that in a no asset case where the trustee subsequently notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the notice.  Courts, however, have recognized the informal proof of claim as an equitable doctrine to ease strict enforcement of the claims bar date.[36]  "To be an informal proof of claim a document must (1) have been timely filed with the bankruptcy court and become part of the record, (2) state the existence and nature of the debt, (3) state the amount of the claim, and (4) evidence the creditor's intent to hold the debtor liable."[37]  An answer filed in an adversary proceeding may be treated as an informal proof of claim.[38]

---

[36] *In re Wigoda*, 234 B.R. 413, 415 (Bankr. N.D. Ill. 1999), *aff'd* 11 Fed.Appx. 624 (7th Cir. 2001).

[37] *Id. (citing Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 190 B.R. 185, 187 (Bankr. S.D.N.Y. 1995)).  *See also Holland v. EMC Mortgage Corp. (In re Holland)*, 274 B.R. 409, 433 (Bankr. D. Mass. 2007); *In re Enron Corp.*, No. 01-16034, 2007 WL 294114 (Bankr. S.D.N.Y. Jan. 31, 2007); *In re Ne. Office and Commercial Props., Inc.*, 178 B.R. 915, 921 (Bankr. D. Mass. 1995); *In re Bowers*, 104 B.R. 362, 364 (Bankr. D. Colo. 1989) (the elements of an informal claim are: "1. the proof of claim must be in writing; 2. the writing must contain a demand by the creditor on the debtor's estate; 3. the writing must express an intent to hold the debtor liable for the debt; 4. the proof of claim must be filed with the Bankruptcy Court; and 5. based on the facts of the case, it would be equitable to allow the amendment.").

[38] *In re Hart*, 246 B.R. at 713 n.4; *Liona Corporation Inc. v. PCH Associates (In re PCH Assocs.)*, 949 B.R. 585, 605 (2d Cir. 1991) (creditor's pleading in opposition to adversary proceeding initiated by the debtor could be treated as an informal proof of claim).

10

Under this doctrine, an informal proof of claim may be subsequently amended by a formal proof of claim.[39]

It is without question that the Answer, filed July 21, 2004, was filed prior to the March 30, 2005 claims bar date.  Although filed in the Debtor's Adversary Proceeding, the Answer became part of the record of the Debtor's case and any search of the docket yields a reference to the Debtor's Adversary Proceeding, and in turn, the Answer.  Despite the Trustee's assertion that he should not be bound by the Answer because he was not a party to the Debtor's Adversary Proceeding, I find otherwise.  The Trustee has cited no authority for this position, and as the pleadings in the Trustee's Adversary Proceeding demonstrate, he was fully aware of the existence and nature of the Debtor's Adversary Proceeding prior to the claims bar date.

In the Answer, the Service denied the Debtor's estimated values and itemized the Debtor's outstanding federal income tax liabilities for tax years 1989, 1992, and 1993.[40]  The Answer clearly stated the existence and nature of the claim; namely, an outstanding federal income tax liability.  It also stated the amount of the claim: $50,785.17.  To the extent that the Answer was in response to the Debtor's complaint seeking a determination that these claims were dischargeable, the Answer's denials and the relief requested evidenced the Service's intent to hold the Debtor liable for these debts and its demand upon the estate.

Accordingly, I find that the Answer satisfies all the elements of an informal proof of claim.  I must now consider whether the Formal Claim may be allowed as an amendment of the Answer.

---

[39] *In re Plunkett*, 82 F.3d 738, 740 (7th Cir. 1996) (*citing Wilkens v. Simon Bros., Inc.*, 731 F.2d 462, 464 (7th Cir. 1984).

[40] See table reproduced above.

11

The United States Court of Appeals for the First Circuit has provided guidance to bankruptcy courts in determining whether an amendment to a proof of claim should be allowed:

> *First*, the proposed amendment must not be a veiled attempt to assert a distinctly new right to payment as to which the debtor estate was not fairly alerted by the original proof of claim. *Second*, the amendment must not result in unfair prejudice to other holders of unsecured claims against the estate. *Third*, the need to amend must not be the product of bad faith or dilatory tactics on the part of the claimant.[41]

First, although the Formal Claim is considerably less than the amount stated in the Answer, the Formal Claim is still a demand for payment of federal income tax liabilities for tax years 1992 and 1993, which the Debtor, and the Trustee, knew remained outstanding.  Second, the Formal Claim cannot be considered prejudicial to the Debtor's unsecured creditors because it sets forth a smaller amount than originally stated in the Answer.  In fact, the unsecured creditors would benefit from the Formal Claim, as the reduced claim would result in a higher dividend to all.  Third, there has been no allegation that the amendment was made in bad faith or that the Service unreasonably delayed its filing.  As such, I find that the Formal Claim is a proper amendment of the Answer.

## V. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order overruling the Trustee's Objection and allow the claim in the amount set forth in the Formal Claim.

_____
William Hillman
United States Bankruptcy Judge

Dated: December 19, 2007

---

[41] *Gens v. Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir. 1997) (*citing Juniper Dev. Group v. Kahn ( In re Hemingway Transp., Inc.)*, 954 F.2d 1, 10 (1st Cir.1992).